FILED'09 MAR 25 10:20USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KIMBER TAYLOR,

        Plaintiff,

    vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

Civil No. 08-0230-AA
OPINION AND ORDER

Max Rae
Attorney at Law
P.O. Box 7790
Salem, OR 97303
     Attorney for plaintiff

Karin Immergut
United States Attorney
District of Oregon
Britannia Hobbs
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

Richard Rodriguez
Special Assistant U.S. Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075
     Attorneys for defendant

1   - OPINION AND ORDER

AIKEN, Judge:

Claimant, Kimber Taylor, brings this action pursuant to the Social Security Act (the Act), 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner denying her application for disability insurance benefits under Title II of the Act and for Supplemental Security Income (SSI) disability benefits under Title XVI of the Act.  For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

<u>PROCEDURAL BACKGROUND</u>

Claimant protectively filed for SSI on July 23, 2003.  Tr. 72, 177.  This is also her alleged onset date.[1]  Tr. 177, 396.  On September 18, 2006, an Administrative Law Judge (ALJ) conducted a hearing at which time he heard testimony from three witnesses: claimant, who was represented by an attorney; Scott T. Stipe, a vocational expert (VE); and Bruce Irvin Jenson, claimant's "care provider."  Tr. 25.  On October 13, 2006, the ALJ issued a decision finding that the claimant was not disabled within the meaning of the Act.  Tr. 22-38.  The Appeals Council denied claimant's request for review, tr. 8-10, making the ALJ's decision the final agency decision.  <u>See</u> 20 C.F.R. §§ 404.981, 416.1481.

<u>STATEMENT OF FACTS</u>

The specific facts of the case will not be repeated here.  Instead, the court refers to and relies on the ALJ's decision and summary of facts, statements, testimony, medical records,

---

[1] As filed, the alleged onset date was January 1, 1983, however plaintiff amended this date to the filing date during the ALJ hearing.

and other evidence.  Each fact relied on by the ALJ included a specific citation to the record, either an exhibit or testimony.

Generally, claimant alleged disability on July 23, 2003. At that time, she was 40 years old and considered to be a "younger individual."  Tr. 69, 38.  See 20 C.F.R. § 404.1563. She has at least a high school education (general equivalency diploma).  Tr. 398.  Additionally, she has some college level computer and keyboard training. Tr. 411-12.  She has not performed substantial gainful activity (SGA) since her alleged onset date.  Tr. 27.

Claimant has a history of drug and alcohol use including marijuana, cocaine, and methamphetamine.  Tr. 145.  She admitted to a methamphetamine relapse in 2004, however, she cannot otherwise recall any use since 1996.  Tr. 399, 413; see also, tr. 425.

Her criminal history includes 18 months in prison around 1991 for criminal mistreatment, associated with the death of her son. Other remote charges include thefts, trespass, and escape. Tr. 146. In December 2002, claimant was convicted of possession of a controlled substance. She received 24 months probation, which she completed on December 13, 2004. Tr. 258-60.

Prior to claimant's onset date she began treatment with psychiatrist Dr. George Suckow at the recommendation of her church.  On March 18, 2003, he made the following "tentative diagnosis:" panic disorder with agoraphobia, rule out bipolar disorder, her son and crowds as stressors, and a global

3    - OPINION AND ORDER

assessment of functioning (GAF) of 35.  Tr. 277.  On April 17,

2003, Dr. Suckow diagnosed claimant as having panic disorder

with agoraphobia, attention deficit disorder, dyslexia, and a

GAF of 35.  Tr. 275.  At that time, he started claimant on

Paxil and Straterra.  Id.

On June 9, 2003, Dr. Suckow reported that claimant seemed

a little better.  Tr. 273.  On August 11, 2003, he reported

claimant was doing fairly well.  Tr. 272.  Additionally, on

September 15, 2003, Dr. Suckow again reported claimant was

doing fairly well.  Tr. 271.  However, on September 15, 2003,

Dr. Suckow's treatment ended due to claimant's failure to

attend scheduled appointments.  Id.  Subsequently, her Oregon

Health Plan insurance was canceled due to her failure to attend

medical appointments.  Tr. 284.

On October 28, 2003, claimant saw clinical psychologist

Dr. Maribeth Kallemeyn.  Tr. 278-285.  At this time, claimant

was no longer taking the medication prescribed by Dr. Suckow.

Tr. 280.  On November 4, 2003, Dr. Kallemeyn made the following

"diagnostic impressions:" bipolar II disorder, panic disorder

with agoraphobia, rule out reading disorder, methamphetamine

dependence in full sustained remission per client report, rule

out dependent personality disorder, history of concussions as a

child per client report, limited finances and recent loss of

health insurance as stressors, and a GAF of 50.  Tr. 284.

On February 4, 2004, claimant's parole officer went to

her residence, at which time she admitted using methamphetamine

three days prior.  Tr. 251.

On February 12, 2004, Disability Determination Services

4   - OPINION AND ORDER

(DDS) psychologist Dr. Peter LeBray found that without drug or alcohol abuse claimant's impairments were non-severe.  Tr. 286-296.  Under "Substance Addiction Disorders," Dr. LeBray wrote "Meth" as a disorder.  Tr. 294.

On April 29, 2004, Dr. Suckow again evaluated claimant and made the following "diagnosis:"  panic disorder with agoraphobia, attention deficit disorder, dyslexia, and a GAF of 35.  Tr. 308-09.

On September 16, 2004, DDS psychologist Dr. Dorothy Anderson, reviewed claimant's files and affirmed Dr. LeBray's assessment that without drug or alcohol abuse claimant's impairments were non-severe.  Tr. 286.

On November 30, 2004, claimant reported to Dr. Suckow that the medications were working, she was feeling and thinking better, and could "stick with something now and follow it through."  Tr. 326.  For example, by herself, she made an entire Thanksgiving dinner for her family without any mistakes.  Id.  On March 8, 2005, claimant reported to Dr. Suckow that she received another drug related criminal charge.  Tr. 330.

On June 26, 2006, claimant reported to Dr. Suckow that with the Strattera she could concentrate better and follow recipes.  Tr. 343.  Additionally, she thought it was really helping her.  Id.

On July 20, 2006, Dr. Suckow completed a "check-the-box" medical source statement.  Tr. 302-04.  The form instructions are in part:

> Please rate the individual's capacities to perform the following basic mental activities of work on a sustained basis. ... If the patient abuses drugs or alcohol, please

5   - OPINION AND ORDER

indicate those impairment levels which you would expect
to persist if drug and alcohol abuse were to cease.

Tr. 302.  Dr. Suckow indicated claimant's conditions would
cause her to miss work most days.  Tr. 304.  He checked yes to
a question asking if claimant's conditions had existed and
persisted with restrictions at least this severe since July 23,
2003.  Id.  He checked no to a question asking if claimant
could manage benefits in her own best interests.  Id.   Dr.
Suckow failed to indicate if drug or alcohol abuse had an
effect on claimant's impairment levels.

On December 14, 2006, claimant sought assistance from
Vocational Rehabilitation Division (VRD).  Tr. 361.  On March
27, 2007, a VRD counselor wrote to Dr. Suckow for claimant's
current limitations.  Tr. 368.  This time Dr. Suckow was
instructed to exclude limitations due to any ongoing drug or
alcohol addiction:

> "In responding to the ratings on this form, please do not
> include any limitations that you believe the individual
> has as a result of his or her alcoholism or drug
> addiction, if any.  In other words, do not include
> limitations that would go away if the individual stopped
> using drugs or alcohol."

Tr. 370 (emphasis in original).  On April 4, 2007, Dr. Suckow
again completed a "check-the-box" form indicating claimant's
limitations relating to cognitive processes, social
interaction, and adaption.  Tr. 370-71.  He indicated that
claimant's limitations varied from moderately to markedly
limited.  Tr. 371.  In addition, he indicated that claimant's
date of disability onset was 1988, and that he expected her
disability to persist for life.  Id.  In response to whether

6   - OPINION AND ORDER

1  claimant is compliant with treatment he marked yes, but also

2  noted "frequent no shows."  Id.

3  STANDARD OF REVIEW

4       This court must affirm the Secretary's decision if it is

5  based on proper legal standards and the findings are supported

6  by substantial evidence in the record.  Hammock v. Bowen, 879

7  F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more

8  than a mere scintilla.  It means such relevant evidence as a

9  reasonable mind might accept as adequate to support a

10 conclusion."  Richardson v. Perales, 402 U.S. 389, 401

11 (1971)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

12 197, 229 (1938)).  The court must weigh "both the evidence that

13 supports and detracts from the Secretary's conclusions."

14 Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

15      The initial burden of proof rests upon the claimant to

16 establish disability.  Howard v. Heckler, 782 F.2d 1484, 1486

17 (9th Cir. 1986).  To meet this burden, claimant must

18 demonstrate an "inability to engage in any substantial gainful

19 activity by reason of any medically determinable physical or

20 mental impairment which can be expected . . . to last for a

21 continuous period of not less than 12 months. . . ."  42 U.S.C.

22 § 423(d)(1)(A).

23      The Secretary has established a five-step sequential

24 process for determining whether a person is disabled.  Bowen v.

25 Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502,

26 416.920.  First the Secretary determines whether a claimant is

27 engaged in "substantial gainful activity."  If so, the claimant

28 is not disabled.  Yuckert, 482 U.S. at 140; 20 C.F.R.

7   - OPINION AND ORDER

1  §§ 404.1520(b), 416.920(b).

2         In step two the Secretary determines whether the claimant

3  has a "medically severe impairment or combination of

4  impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R.

5  §§ 404.1520©), 416.920©).  If not, the claimant is not

6  disabled.

7         In step three the Secretary determines whether the

8  impairment meets or equals "one of a number of listed

9  impairments that the Secretary acknowledges are so severe as to

10  preclude substantial gainful activity."  Id.; see 20 C.F.R.

11  §§ 404.1520(d), 416.920(d).  If so, the claimant is

12  conclusively presumed disabled; if not, the Secretary proceeds

13  to step four.  Yuckert, 482 U.S. at 141.

14         In step four the Secretary determines whether the

15  claimant can still perform "past relevant work."  20 C.F.R.

16  §§ 404.1520(e), 416.920(e).  If the claimant can work, she is

17  not disabled.  If she cannot perform past relevant work, the

18  burden shifts to the Secretary.  In step five, the Secretary

19  must establish that the claimant can perform other work.

20  Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) &

21  (f), 416.920(e) & (f).  If the Secretary meets this burden and

22  proves that the claimant is able to perform other work which

23  exists in the national economy, she is not disabled.  20 C.F.R.

24  §§ 404.1566, 416.966.

25                          DISCUSSION

26  The ALJ's Findings

27         At step one of the five step sequential evaluation

28  process outlined above, the ALJ found that claimant had not

8    - OPINION AND ORDER

engaged in substantial gainful activity during the relevant
time period.  Tr. 27, Finding 1.  This finding is not in
dispute.  At step two, the ALJ found that claimant's
impairments are non-severe.  Tr. 27, Finding 2.  This finding
is in dispute.  Although this would normally end the inquiry,
the ALJ proceeded to make findings in the alternative for steps
three through five.

At step three, the ALJ found that claimant did not have
an impairment or combination of impairments that met or
medically equaled any of the listed impairments.  Tr. 28,
Finding 3.  This finding is in dispute.  Additionally, the ALJ
found that claimant had a residual functional capacity (RFC):
"to perform simple repetitive work with no public interaction
and limited co-worker interaction."  Tr. 29. This finding is in
dispute.

At step four, the ALJ found that claimant could probably
perform her past relevant work as a mail sorter.  Tr. 36,
Finding 5.  This finding is in dispute.  Finally, at step five,
the ALJ found that claimant could perform other work existing
in significant numbers in the national economy; specifically as
a mail sorter,  laundry worker, and food sorter.  Tr. 37,
Finding 9.  This finding is in dispute.

The ALJ's Step Two Finding

After reviewing the record and the ALJ's decision, I find
the ALJ's decision is supported by substantial evidence.  At
step two, the ALJ found claimant's psychological and medical
treatment was based solely on her subjective symptom report.
None of the mental diagnoses were confirmed by objective

medical evidence such as standardized psychological testing.
The ALJ further found that claimant lacked credibility, which
detracted from the reliability of medical opinions based solely
on her subjective symptoms.

The ALJ additionally found a consultative examination was
unnecessary because claimant had made noted improvement since
her onset date.  This finding is supported by claimant's own
self-report and corroborated by Dr. Suckow.  Based on the lack
of adequate objective medical evidence and the claimant's
improvement, the ALJ found at step two that claimant's
impairments are non-severe.  I agree.  Furthermore, I find
claimant's failure to meet her initial burden of proving her
disability justifies the denial of benefits.

Lack of Objective Evidence

In Social Security Ruling (SSR) 96-4p, the Social
Security Administration (SSA) explained what is needed under
SSA regulations to show a medically determinable impairment.
SSR 96-4p, 1996 WL 374187 (July 2, 1996).[2]  The ruling
clarified that "the existence of a medically determinable
physical or mental impairment must be established by medical
evidence consisting of signs, symptoms, and laboratory
findings, [however] the regulations further provide that <u>under</u>
<u>no circumstances may the existence of an impairment be</u>

---

[2]"SSRs do not have the force of law" but "represent the Commissioner's
interpretation of the agency's regulations." <u>Holohan v. Massanari</u>, 246 F.3d 1195,
1202 n.1 (9th Cir. 2001).  Therefore we "give them some deference" as long as they
are consistent with the Social Security Act and regulations.  <u>Id.</u> (citation
omitted).  SSR 96-4p is consistent with the purpose of Titles II and XVI of the Act
to provide financial assistance to those who are disabled.  <u>See Kildare v. Saenz</u>,
325 F.3d 1078, 1080 (9th Cir. 2003); <u>see also Ukolov v. Barnhart</u>, 420 F.3d 1002,
1004 (9th Cir. 2005).

established on the basis of symptoms alone." Id. at *1

(footnote omitted)(emphasis added); see also 20 C.F.R. §§

404.1508, 416.908.  The ruling distinguished between symptoms

and signs: "symptoms . . . are an individual's own perception

or description of the impact of his or her physical or mental

impairment(s). . . . When any of these manifestations is an

anatomical, physiological, or psychological abnormality that

can be shown by medically acceptable clinical diagnostic

techniques, it represents a medical 'sign' rather than a

'symptom.'" SSR 96-4p, 1996 WL 374187, at *1 n.2; see also 20

C.F.R. §§ 404.1528(a)-(b), 416.928(a)-(b).  The ruling then

re-emphasized the importance of objective medical evidence to

determine disability:

> Regardless of how many symptoms an individual alleges, or
> how genuine the individual's complaints may appear to be,
> the existence of a medically determinable physical or
> mental impairment cannot be established in the absence of
> objective medical abnormalities; i.e., medical signs and
> laboratory findings. . . . In claims in which there are
> no medical signs or laboratory findings to substantiate
> the existence of a medically determinable physical or
> mental impairment, the individual must be found not
> disabled at step 2 of the sequential evaluation process.

SSR 96-4p, 1996 WL 374187, at *1-2.

Accordingly, claimant can only establish an impairment if

the record includes signs and symptoms.  Ukolov v. Barnhart,

420 F.3d 1002, 1005 (9th Cir. 2005).

Ruling SSR 96-6p provides that medical opinions offered

to support an impairment must include "symptoms [and a]

diagnosis."  See SSR 96-6p, 1996 WL 374180, at *1 (July 2,

1996).  Claimant's records contain no reference to results from

11   - OPINION AND ORDER

1    "medically acceptable clinical diagnostic techniques" that

2    would support a finding of impairment.  See SSR 96-4p, 1996 WL

3    374187, at *1 n.2.  Additionally, claimant's records are based

4    solely on claimant's own "perception or description" of her

5    problems. Id.; 20 C.F.R. §§ 404.1528(a)-(b), 416.928(a)-(b).

6    Because none of the medical opinions include a finding of

7    impairment, or objective test results, claimant failed to meet

8    her burden of establishing disability.[3]  See Celaya v. Halter,

9    332 F.3d 1177, 1180 (9th Cir. 2003) ("Step two disqualifies

10   those claimants who do not have one or more severe

11   impairments.").  Under such a circumstance, the ALJ committed

12   no legal error in finding lack of impairment at step two of the

13   process.  See Ball v. Massanari, 254 F.3d 817, 823 (9th Cir.

14   2001) ("If the claimant's ailment does not pass step 2, ... it

15   is not disabling.").

16       In addition to the lack of objective evidence, further

17   reasons support finding claimant's impairments non-severe at

18

_____

19   [3]On March 28, 2003, Dr. Suckow made a "tentative diagnosis" and again on April
20   17, 2003, he made a similar "diagnosis."  Additionally, on August 11, 2003, the
     claimant asked for a statement from Dr. Suckow stating she is being treated for
21   anxiety with panic and agoraphobia which she needed for Adult and Family services.
     However, there are no records of objective test results supporting these
22   "diagnoses."  All diagnoses appear to be based solely on claimant's subjective
     symptoms.  Notably, on April 29, 2004, Dr. Suckow's records indicate that claimant
23   had a history of drugs and alcohol, but has been clean and sober since 1996, except
     for a few drinks four years ago.  However, just two months before this visit
24   claimant admitted using methamphetamine to her probation officer.  Tr. 251 and Tr.
     308.
25       Similarly, on November 4, 2003, Dr. Kallemeyn made "diagnostic impressions."
     Again, no objective test results support her diagnosis.  The diagnosis again appears
26   to be based solely on claimant's subjective symptoms.  The only objective test given
     was a WAIS-III Digit Span sub-test which claimant scored in the 50th percentile
27   compared to others her age.  Additionally, Dr. Kallemeyn remarked that claimant's
     performance on mental status tasks was better than expected.  Claimant performed
28   average on a test of attention/concentration, above average on the simple attention
     portion, and below average on the complex attention portion.

1   step two.  These include contradictory and inaccurate evidence,

2   claimant's positive response to medication, and claimant's lack

3   of credibility.

4   Contradictory and Inaccurate Evidence

5        Generally, "a treating physician's opinion is ...

6   afforded the greatest weight in disability cases, [however,] it

7   is not binding on an ALJ with respect to the existence of an

8   impairment or the ultimate determination of disability."

9   Batson v. Comm'r of the SSA, 359 F.3d 1190, 1195 (9th Cir.

10  2004) (quoting Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th

11  Cir. 2001)) (emphasis added).  When evidence in the record

12  contradicts the opinion of a treating physician, the ALJ must

13  only present "specific and legitimate reasons" for discounting

14  the treating physician's opinion, supported by substantial

15  evidence.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

16  However, "[t]he ALJ need not accept the opinion of any

17  physician, including a treating physician, if that opinion is

18  brief, conclusory, and inadequately supported by clinical

19  findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.

20  2002).

21       Here, the reports of DDS psychologists Dr. Peter LeBray

22  and Dr. Dorothy Anderson contradict the opinions of Dr. Suckow

23  and Dr. Kallemeyn.  Moreover, as noted above, there is a lack

24  of objective evidence supporting Drs. Suckow and Kallemeyn's

25  opinions.  Thus, the ALJ was only required to provide "specific

26  and legitimate" reasons supported by substantial evidence for

27  discounting their opinions.  Lester, 81 F.3d at 830.

28       Notably, nearly all of the diagnoses claimant relies on

are made by Dr. Suckow.  Additionally, two of the diagnoses
claimant relies on were made by Dr. Suckow prior to claimant's
onset date of July 23, 2003.  Moreover, shortly after
claimant's onset date, Dr. Suckow twice reported that claimant
was doing "fairly well."  Presumably, this was because, at the
time, claimant was following the prescribed treatment plan,
including medication.  Also notable, is neither Dr. Suckow nor
any other doctor diagnosed claimant while she was taking her
medication.  Based on this record, the best indicator of the
treatment's effectiveness are Dr. Suckow's records and
claimant's own self-report that she was doing fairly well.

As discussed above, objective testing is required to
establish a severe impairment at step two and none can be found
in Dr. Suckow's record.  In addition to lacking objective
testing, Dr. Suckow's records are inaccurate.  In his April 29,
2004, record he reports claimant as being clean and sober since
1996 with the exception of a few drinks four years ago.
Similarly, his 2003 records state that claimant has been clean
and sober since 1996 with the exception of a few drinks three
years ago.  The 2004 record was made shortly after claimant
admitted using methamphetamine to her parole officer.  Based on
this, it appears claimant lied to Dr. Suckow.  Additionally,
considering the lack of objective evidence, the similarity and
inaccuracies of the 2003 and 2004 records, a question arises as
to the level of thoroughness in these inquiries.

Accordingly, I find the ALJ did not err in rejecting Dr.
Suckow's diagnoses as based solely on claimant's self report.
Additionally, the history considered by Dr. Suckow was

inaccurate as to her drug use, which I consider to be material.
This is bolstered by Drs. LeBray and Anderson's opinions
finding that without drug or alcohol abuse claimant's
impairments were non-severe.  It is unclear whether Dr. Suckow
took into account the effects of claimant's drug or alcohol
abuse and whether he knew of claimant's methamphetamine use in
2004.  Consequently, I find the ALJ did not err in giving
little weight to Dr. Suckow's opinion.

<u>Claimant's Response to Medication</u>

     Impairments effectively controlled by medication are not
disabling for the purpose of determining eligibility for SSI
benefits.  <u>See, e.g.</u>, <u>Warre v. Comm'r of the SSA</u>, 439 F.3d
1001, 1006 (9th Cir. 2006); <u>see also</u> <u>Odle v. Heckler</u>, 707 F.2d
439, 440 (9th Cir. 1983) (benefits denied because claimant's
impairments responded to medication).  However, a disabled
claimant may not be denied benefits because of her failure to
obtain treatment she cannot afford.  <u>See, e.g.</u>, <u>Gamble v.</u>
<u>Chater</u>, 68 F.3d 319, 321 (9th Cir. 1995).  SSR 82-59 provides
that an individual's failure to follow prescribed treatment is
justifiable if the individual is unable to afford such
treatment.  <u>See id.</u> (noting that SSR 82-59 interprets 20 C.F.R.
§§ 404.1530 and 416.930 and is binding on the SSA).

     The ALJ found that claimant's impairments respond to
medication.  On April 17, 2003, Dr. Suckow gave claimant a free
sample of Strattera and Paxil.  After starting the medication,
claimant went from a "little better" in June, to "fairly well"
by August, and she continued to do "fairly well" until her last
visit on September 15, 2003.  During her last visit, claimant

15   - OPINION AND ORDER

reported that when she forgets to take her medication the
difference is noticeable; she cannot concentrate.  On September
15, 2003, claimant's case was closed for failure to attend
scheduled meetings.  Subsequently, her insurance through Oregon
Health Plan was canceled for missing three appointments.

On October 28, 2003, claimant reported to Dr. Kallemeyn
that friends and family commented on claimant's improvement
with medication, that "they've never seen me this functional."
Tr. 280.  However, she also relayed that she recently ran out
of her medication.  Notably, no doctor has diagnosed claimant
when she was on her medication.  Substantial evidence in the
record supports a finding that claimant does fairly well when
on her medication and that her impairments are effectively
controlled by medication.

Here, claimant was either receiving the medication free
of charge as sample packs or pursuant to her insurance plan,
but she failed to attend medical appointments and failed to
regularly take her medication.  Because she failed to attend
appointments her treatment was canceled.  Later on, her
insurance was canceled for missing three appointments.  Her
failure to follow the prescribed treatment has little
explanation, but it was not because she could not afford it.
Additionally, the ALJ did not make a factual finding that
claimant does not have, or cannot find, resources for obtaining
her medications.  See SSR 82-59 (requiring all possible
community resources to be explored and claimant's financial
circumstances to be documented); see also Warre, 439 F.3d at
1006.  Accordingly, I find that claimant's impairments can be

16   - OPINION AND ORDER

controlled effectively with medication, and therefore are non-
severe for the purposes of determining eligibility for SSI
benefits.

Claimant's Lack of Credibility

        The ALJ found that claimant's description of her symptoms
was not entirely credible.  In evaluating the credibility of a
claimant's testimony regarding subjective symptoms, an ALJ must
engage in a two-step analysis.  Lingenfelter v. Astrue, 504
F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must
determine whether the claimant has presented objective medical
evidence of an underlying impairment which could reasonably be
expected to produce the pain or other symptoms alleged."  Id.
at 1036 (internal citations and quotation marks omitted). The
claimant is not required to show that her impairment "could
reasonably be expected to cause the severity of the symptom she
has alleged; she need only show that it could reasonably have
caused some degree of the symptom."  Id. (quoting Smolen v.
Chater, 80 F.3d 1273, 1282 (9th Cir. 1996)).  Second, if the
claimant meets the first test and there is no evidence of
malingering, the ALJ can only reject the claimant's testimony
about the severity of the symptoms if she gives "specific,
clear and convincing reasons" for the rejection.  Id.

        An ALJ may consider many factors in weighing a claimant's
credibility, including "(1) ordinary techniques of credibility
evaluation, such as the claimant's reputation for lying, prior
inconsistent statements concerning the symptoms, and other
testimony by the claimant that appears less than candid; (2)
unexplained or inadequately explained failure to seek treatment

1   or to follow a prescribed course of treatment; and (3) the

2   claimant's daily activities." Tommasetti v. Astrue, 533 F.3d

3   1035, 1039 (9th Cir. 2008)(quoting Smolen, 80 F.3d at 1284 (9th

4   Cir. 1996)).  If an ALJ's finding is supported by substantial

5   evidence, the court "may not engage in second-guessing." Id.

6   (quoting Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir.

7   2002)).

8        Here, claimant failed to meet the threshold of providing

9   objective medical evidence of an underlying impairment.

10  Accordingly, the ALJ could have rejected her subjective

11  complaints based on that failure alone.  Instead, he made

12  specific findings supporting his decision to discount her

13  statements and testimony, noting that: (1) claimant made

14  inconsistent statements regarding her use of illicit drugs and

15  alcohol (tr. 31, 86, 145-55, 280, 308); (2) claimant provided

16  inconsistent reasons for leaving her job as a bell ringer (tr.

17  30, 217, 244); (3) claimant failed to maintain her prescription

18  regimen, failed to attend therapy, and generally failed to

19  comply with medical advice that increased her ability to

20  function (tr. 32, 34-35, 81-159, 271-73, 310, 315, 316-19,

21  325,-28, 330-31, 334-36, 343); (4) evidence of claimant's

22  secondary gain (tr. 34, 272, 279); (5) claimant lacked

23  motivation or interest in work (tr. 32-33); (6) the record

24  lacked objective evidence to support the degree of limitation

25  she has alleged.  Tr. 30-35.  The AlJ also noted that many of

26  the claimant's crimes are of moral turpitude, which indicates

27  doubt about her truthfulness.  The above findings are supported

28  by the record and demonstrate claimant's lack of credibility.

18   - OPINION AND ORDER

For all the reasons stated above, I hold that the ALJ's finding that claimant was not disabled at step two is supported by substantial evidence.  Based on this finding, I will not address claimant's remaining allegations of error.

CONCLUSION

The Commissioner's decision is based on substantial evidence, and is therefore, affirmed. This case is dismissed. IT IS SO ORDERED.

Dated this $20$ day of March 2009.


_____
Ann Aiken
United States District Judge

19    - OPINION AND ORDER